# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYREE WALLACE**, | : CIVIL ACTION NO. 1:10-CV-0948 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **JANE DOE, et al.**, | : |
| **Defendants** | : |

## **MEMORANDUM**

Tyree Wallace ("Wallace" or "plaintiff"), a Pennsylvania state inmate, initiated this civil rights action pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated while incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"). (Doc. 1.) The following defendants remain[1]: Superintendent Raymond W. Lawler ("Lawler"); Unit Manager Scott Walters ("Walters"); Jay Johnson ("Johnson"), Counselor; Barbara Hollibaugh ("Hollibaugh"), Unit Manager; and "Jane Doe, Plumbing Supervisor." Presently pending is defendants' motion for summary judgment (Doc. 76) pursuant to Federal Rule of Civil Procedure 56 and motion to dismiss Jane Doe,

---

[1] On January 12, 2011, the complaint against defendant Klemick was dismissed in its entirety. (Doc. 52.) On June 17, 2011, defendants' motion for summary judgment on the inadequate medical care claim was granted as to defendants "Jane Doe, Medical" and Showalter and entry of judgment was deferred pending final disposition of this matter. (Doc. 63, at 7.) The only remaining claim is plaintiff's failure to protect claim against defendants Lawler, Walters, Johnson, Hollibaugh, and "Jane Doe, Plumbing Supervisor." (Id.)

Plumbing Supervisor pursuant to Federal Rules of Civil Procedure 4(m). For the reasons set forth below, the motions will be granted.

I.   **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

II.   **Statement of Facts**

While housed on EA-Unit at SCI-Huntingdon, Wallace suffered a seizure on April 28, 2008 (Doc. 1, at 2; Doc. 79; ¶¶ 1, 13; Doc. 89, ¶¶ 1, 13), which allegedly rendered him unconscious for approximately one hour and forty-five minutes. (Doc. 1 at 2, 3.) During that time, he was lying on the floor against an uncovered radiator. (Id.) He suffered severe burns to his face, head, arm, and ear. (Doc. 79, ¶ 42; Doc. 89, ¶ 42.)

Plaintiff testified at his deposition that while incarcerated at SCI-Huntingdon he requested to be transferred to B Block and the Special Needs Unit a number of times between 2004 and 2006, but does not recall whether he put those requests in writing.  (Doc. 79, ¶ 7; Doc. 89 ¶ 7.)  He is not sure when he last requested to be moved off of EA Unit.  (Doc. 79, ¶ 8; Doc. 89, ¶ 8.)  No grievances were filed on the issue.  (Doc. 79, ¶ 7; Doc. 89 ¶ 7.)

Plaintiff also testified at his deposition that he was first diagnosed with a seizure disorder in 2002, after suffering a seizure.  (Doc. 79, ¶ 3; Doc. 89 ¶ 3.)  He was taken to J.C. Blair Memorial Hospital and prescribed Dilantin, which is an anti-seizure medication.  (Id.)  He continued to take Dilantin from 2002 until the date of the radiator incident on April 28, 2008, with some exceptions.  (Id.)  He indicated that his Dilantin prescription expired in April of 2008, but could not pinpoint the number of days he was without the drug.  (Doc. 79, ¶ 4; Doc. 89 ¶ 4.)  In his statement of material facts, he states that his prescription expired on March 31, 2008, but that he had enough medicine to last until the week before the incident.  (Doc. 89, ¶ 10.)  Based on his review of his medical records, he determined that the last time that he had a seizure was one year prior to the radiator incident.  (Id.)

Because of his seizure disorder, Wallace was given bottom bunk/bottom tier status. (Doc. 79, ¶¶ 9, 68; Doc. 89, ¶¶ 9, 68.)  Inmates with seizure disorders are assigned to the bottom bunk to prevent them from falling from the top bunk during a seizure, and to the bottom tier for easier access to medical care.  (Doc. 79, ¶ 68; Doc. 89, ¶ 68.)  On April 28, 2008, he was housed on EA Unit in the same cell that he

had been housed in for months. (Doc. 79, ¶ 8; Doc. 89, ¶ 8.) The cell, which is 11 feet 10 inches by 6 feet 6 inches, contains a bed, sink, toilet, and radiator. (Doc. 79, ¶¶ 9, 39; Doc. 89 ¶¶ 9, 39.) The radiator is controlled by both inmates and by the institution. (Doc. 79, ¶ 14; Doc. 89, ¶ 14.) There is a knob on the radiator that enables an inmate to turn the radiator on and off. (Doc. 79, ¶ 40.) The radiators on EA Unit are not covered and have never been covered. (Id.) According to plaintiff, the radiator is always hot. (Doc. 89, ¶ 14.)

The radiator in plaintiff's cell was located approximately 12 inches from the bottom bunk. (Doc. 79, ¶ 9; Doc. 89 ¶ 9.) On April 28, 2008, he was alone in his cell on the bottom bunk, and did not experience any warning signs of the onset of the seizure. (Doc. 79, ¶¶ 9, 10; Doc. 89, ¶¶ 9,10.) He suffered a seizure during which he lost consciousness. (Doc. 79, ¶ 10; Doc. 89 ¶ 10.) (Id.) During that time, he was lying on the floor against an uncovered radiator. (Doc. 1 at 2, 3.) He suffered severe burns to his face, head, arm, and ear which required hospitalization. (Doc. 79, ¶ 42; Doc. 89, ¶ 42.)

In his deposition testimony, he stated that he had never been burned by the radiator before the April 28, 2008, incident. (Doc. 79, ¶ 14.) However, in his statement of facts, he indicates that he had been burned in the past, but never as severe as the burns suffered during the seizure incident. (Doc. 89, ¶ 14.) He never made a complaint about the cell, or the radiator in his cell, before April 28, 2008, the date of the seizure. (Doc. 79, ¶ 11; Doc. 89, ¶ 11.)

### A.     **Defendant Lawler**

Defendant Lawler is the former Superintendent at SCI-Huntingdon. (Doc. 79, ¶ 29; Doc. 89, ¶ 29.) He held the position of Corrections Superintendent 2 from November, 2007, until his retirement on December 24, 2010. (Id.) As the Superintendent at SCI-Huntingdon, Lawler was the administrative head of the institution. (Doc. 79, ¶ 30.) There were two Deputy Superintendents who reported directly to him. (Id.) He toured the institution on a regular basis, but did not normally get involved in the day-to-day operations of the individual housing units at SCI-Huntingdon. (Id.) His duties also included responding to appeals from inmate grievance appeals in accordance with Department policy DC-ADM 804. (Id.) SCI-Huntingdon was first opened in 1889. (Doc. 79, ¶ 31; Doc. 89, ¶ 31.) Lawler believes that EA Unit was constructed sometime in the 1940's, and that the cells have radiators inside them. (Id.) He does not recall any complaints from the inmates about the radiators in the cells. (Doc. 79, ¶ 31.) He also does not know of any inmate who was burned by the radiator in his cell at SCI-Huntingdon prior to the incident with plaintiff. (Id.) He does not think that covers would have made the cells any safer. (Doc. 79, ¶ 33.) In addition, inmates could hide contraband under the radiator covers. (Id.)

Plaintiff never discussed with Lawler his desire to be moved off EA Unit. (Doc. 79, ¶ 18; Doc. 89, ¶ 18.) If he had, Lawler would have told him to work with the Unit Management Team on his unit, which is comprised of a Unit Manager, Corrections Officer, treatment staff, and other assigned staff. (Doc. 79, ¶ 35; Doc.

(Doc. 79, ¶ 33; Doc. 89, ¶ 33.) Lawler did address Wallace's appeal of the denial of his grievance about the incident and concluded as follows: "I find that staff made a reasonable effort to accommodate your seizure disorder by giving you bottom tier, bottom bunk clearance. I also find that there is no reason that you should not have been housed on EA-Unit prior to your seizure as you had been seizure-free for two years." (Doc. 79, ¶ 35; Doc. 89, ¶ 35.)

Plaintiff alleges that Lawler is responsible for the policy that put him in the dangerous situation and for the day to day operations of the institution, including housing and overall safety. (Doc. 79. ¶ 18; Doc. 89, ¶ 18.)

### B.   **Defendant Walters**

At the relevant time, defendant Walters held the position of Corrections Unit Manager at SCI-Huntingdon. (Doc. 79, ¶ 37; Doc. 89, ¶ 37.) His duties included managing the day to day operations of EA Unit. (Doc. 79, ¶ 38.) He does not think the cells on EA Unit are unsafe and, to the best of his knowledge, no inmate ever suffered serious burns as a result of touching the radiators on EA Unit before the incident with plaintiff. (Doc. 79 ¶ 41.) Although he was not working on the day of the incident, he is aware that plaintiff suffered burns from the radiator in his cell that required hospitalization. (Doc. 79, ¶ 42; Doc. 89, ¶ 42.) He was unaware that Wallace suffered from a seizure disorder until after the radiator incident. (Doc. 79, ¶ 43.) He also never discussed his medication with him and had no reason to believe that he was not receiving his medication. (Id.) Plaintiff never discussed the issue of radiator covers with Walters. ((Doc. 79, ¶ 44; Doc. 89, ¶ 44.) Nor did he discuss

being moved from EA-Unit with Walters. (Id.) Plaintiff only dealt with him "a little" while on the block. (Doc. 79, ¶¶ 2, 6; Doc. 89, ¶¶ 2, 6.)

Walters is named in this action because plaintiff believes that: (1) Walters denied his request to be moved off of EA-Unit; (2) he was responsible for how and where inmates were housed on EA-Unit; (3) he had knowledge that inmates had been burned on the radiators in EA-Unit cells; (4) he was aware of plaintiff's seizure condition and still housed him in an EA-Unit cell. (Doc. 79, ¶ 17; Doc. 89, ¶ 17.)

### C.     Defendant Johnson

As a Corrections Counselor 2 at SCI-Huntingdon, defendant Johnson reports to the Unit Manager of the housing unit where she is assigned. (Doc. 79, ¶ 54; Doc. 89, ¶ 54.) She provides group and individual counseling as well as casework services to inmates in her housing unit. (Id.) Johnson was assigned to EA Unit from 2005 through November of 2010. (Id.) Johnson never heard any complaints about the cells. (Doc. 79, ¶ 56.) She never heard of any inmate being burned by the radiators in the cells prior to the incident involving inmate Wallace. (Id.) Johnson interacted with plaintiff on a weekly basis. (Doc. 79, ¶¶ 2, 6; Doc. 89, ¶¶ 2, 6.) He never complained to her about his cell on EA Unit. (Id. at ¶ 57.) She does not recall Wallace ever asking her about a transfer off of the housing unit; if he had, she would have referred him to Unit Manager Walters because she had no authority to transfer him. (Id. at ¶ 55.) Plaintiff names defendant Johnson because she allegedly

7

failed to properly process his request to be moved off EA-Unit. (Doc. 79. ¶ 18; Doc. 89, ¶ 18.)

### D.  Defendant Hollibaugh

As a Corrections Unit Manager at SCI-Huntingdon, defendant Hollibaugh's duties include managing the day to day operations of inmate housing units. (Doc. 79, ¶ 47: Doc. 89, ¶ 47.) She was plaintiff's Unit Manager on housing units other than EA Unit, but had not had any contact with him for more than three years preceding April 28, 2008. (Doc. 79, ¶¶ 48, 50; Doc. 89, ¶¶ 48, 50.) Hollibaugh knew that Wallace had ground tier and bottom bunk status medical housing limitations from her past dealings with him. (Doc. 79, ¶ 51; Doc. 89, ¶ 51.) She knew that the cells in EA Unit contained radiators, but she had never heard of any inmate being burned by the radiator while in their cell. (Doc. 79, ¶ 48.) She believed that he was housed appropriately on EA unit. (Doc. 79, ¶ 51; Doc. 89, ¶ 51.)

At the time of the events alleged in the complaint, she supervised CA Unit. (Doc. 79, ¶ 49; Doc. 89, ¶ 49.) Following the radiator incident, inmate Wallace was transferred to Hollibaugh's housing unit. (Doc. 79, ¶ 52; Doc. 89, ¶ 52.) She advised him that he would not be returning to EA Unit based on medical concerns. (Id.) In addition, his family did not want him to return to that housing unit. (Id.)

### E.  Defendant Jane Doe, Plumbing Supervisor

Defendant Jane Doe, Plumbing Supervisor was never identified by plaintiff and, consequently, was never served.

**III. Discussion**[2]

    **A. Defendants Lawler, Walters, Johnson, Hollibaugh**

To prevail on an Eighth Amendment failure to protect claim, the plaintiff must provide evidence establishing that: (a) "the conditions in which he was detained entailed a sufficiently serious risk of harm"; (2) the Defendants acted with "deliberate indifference" to his health and safety; and (3) causation, *i.e.*, a showing that Plaintiff was harmed or was in an imminent danger of harm as a result of such deliberate indifference. See Farmer v. Brennan, 511 U.S. at 834; Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Wallace's claim fails on all three prongs.

First, he fails to demonstrate that he was incarcerated under conditions posing a substantial or pervasive risk of serious harm. It is plaintiff's position that the uncovered radiators in EA-Unit create a substantial or pervasive risk of harm to the inmates as evidenced by the injuries he suffered on April 28, 2008. An uncovered radiator simply cannot be found to present a pervasive risk of serious harm. While a radiator cover might improve the condition of plaintiff's cell, "(t)he Constitution does not require that sentenced prisoners be provided with every amenity which one might find desirable." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979). "Large numbers

---

[2]Defendants argue that they are entitled to an entry of judgment based upon plaintiff's failure to exhaust the administrative remedy process. A Memorandum and Order were issued on June 17, 2011, wherein this Court concluded that plaintiff had administratively exhausted the failure to protect claim against defendants Lawler, Walters, Johnson, Hollibaugh, and Jane Doe, Plumbing Supervisor. (Doc. 63.) The issue will not be revisited.

of people in the population at large, especially senior citizens, poor families and students, face the same problem of hot radiators in small rooms and recalcitrant landlords. Just as medical malpractice does not become a constitutional tort merely because the victim is a prisoner, so does negligence with respect to institutional radiators not become a constitutional tort merely because the victim is a prisoner." Juncker v. Tinney, 549 F. Supp. 574 (D. Md. 1982).

Even if it were determined that uncovered radiators presented such a risk, the claim would still fail on this prong. Plaintiff asserts only one incident and the objective component of a failure to protect claim is not generally satisfied by allegations of a single incident. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir.1985). Although plaintiff asserts that both he and other inmates housed on EA-Unit suffered radiator burns prior to the April 28, 2008 incident, he fails to come forth with any evidence, documentary or otherwise, to support these assertions. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir.1989).

Moreover, even if he were to satisfy the first prong, he clearly fails to satisfy the second prong. Deliberate indifference is more than a mere lack of ordinary due care; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834. This requires the court to analyze whether a prison official was, from a subjective standpoint, deliberately indifferent to an inmate's health or

safety. Farmer, 511 U.S. at 834. Specifically, the question is whether an official consciously knew of and disregarded an excessive risk to the prisoner's well-being. Id. at 840-44; Hamilton, 117 F.3d at 747. It is not enough to show that the prison official was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837. Rather, the prison official "must also draw the inference." Id. The official's actual knowledge may be proved by circumstantial evidence. Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001).

Wallace attempts to establish deliberate indifference by alleging that the named defendants were aware of other inmates on EA-Unit having been burned by the radiators prior to his April 28, 2008 incident, and that they failed to eradicate the danger by covering the radiators. However, he fails to support these allegations by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. He offers absolutely nothing, beyond his conclusory assertions, indicating that any of the named defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that they acted with reckless disregard of that known risk.

**B.     Defendant "Jane Doe, Plumbing Supervisor"**

This action was commenced on May 4, 2010. (Doc. 1.) "If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its

own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). If plaintiff shows good cause for the failure, the court must extend the time for service. (Id.)

On June 17, 2011, plaintiff was notified by the Court that his failure to identify "Jane Doe, Plumbing Supervisor" on or before August 19, 2011, would result in dismissal of the defendant. This deadline has long since passed and plaintiff has failed to demonstrate good cause for his failure to identify and serve Jane Doe. Additionally, defendants move to dismiss the Jane Doe defendant pursuant to Federal Rule of Civil Procedure 4(m). Dismissal of "Jane Doe, Plumbing Supervisor" is warranted at this time.

## VI. Conclusion

Based on the foregoing, defendants' motion for summary judgment (Doc. 76) will be granted and "Jane Doe, Plumbing Supervisor" will be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate order follows.

                                                S/ Christopher C. Conner
                                                CHRISTOPHER C. CONNER
                                                United States District Judge

Dated:       June 13, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYREE WALLACE**, | : | **CIVIL ACTION NO. 1:10-CV-0948** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **JANE DOE, et al.,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 13th day of June, 2012, upon consideration of defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. 76), and in accordance with the forgoing memorandum, it is hereby ORDERED that:

1. The motion (Doc. 76) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants "Jane Doe, Medical," Showalter, Lawler, Walters, Johnson and Hollibaugh.[3]

3. "Jane Doe, Plumbing Supervisor" is DISMISSED pursuant to Federal Rule of Civil Procedure 4(m).

4. The Court DECLINES to exercise supplemental jurisdiction over any state law claims lodged against defendants.

5. The Clerk of Court is directed to CLOSE this case.

---

[3] In this Court's Order of June 7, 2011 (doc. 63), entry of Judgment was deferred as to defendants "Jane Doe, Medical" and Showalter pending final disposition of this matter.

6. Any appeal from this order is DEEMED frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).

                                        <u>S/ Christopher C. Conner</u>
                                        CHRISTOPHER C. CONNER
                                        United States District Judge